UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-1810 (ABJ) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

This lawsuit involves two requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2011), made by plaintiff Citizens for Responsibility and Ethics in Washington ("CREW"), seeking documents related to media requests to interview former lobbyist Jack Abramoff while he was in the custody of the Bureau of Prisons. CREW seeks a declaratory judgment that DOJ has violated FOIA by failing to fulfill CREW's request for records and an injunction compelling DOJ to comply with the FOIA requests. Am. Compl. ¶ 2. The parties have cross-moved for summary judgment [Dkt. # 10 and 11]. For the reasons below, the Court will grant DOJ's motion for summary judgment and will deny CREW's cross-motion for partial summary judgment.

**I.    Background**

Plaintiff CREW is a nonprofit corporation "committed to protecting the rights of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials." Am. Compl. ¶ 4. Using government records available under FOIA, CREW aims to "empower citizens to have an influential voice in government decisions and in

the governmental decision making process." *Id.* DOJ's Criminal Division and its component, the Bureau of Prisons ("BOP"), have possession and control of the records requested by plaintiff. *Id.* ¶ 8.

### A. CREW's First FOIA Request

CREW made two separate but related FOIA requests that gave rise to this action. On May 5, 2010, CREW submitted its first request to the BOP seeking:

- (1) "all records of communications between the [BOP] and Alex Gibney, Zena Barakat, and/or Jigsaw Productions, either initiated or received by the BOP, that refer, mention or pertain in any way to Jack Abramoff;"

- (2) "records of all communications between Abbe Lowell in his capacity as counsel for Mr. Abramoff and the BOP, either initiated or received by the BOP;"

- (3) "any records regarding Mr. Abramoff's potential involvement, participation, or cooperation in any movies, books, magazines, newspapers, or television productions."

Ex. A to Baumgartel Decl.

The BOP conducted an initial search for documents on July 28 and 29, 2010, and a second search on or around November 1, 2010. *Id.* ¶ 7–8.[1] On December 16, 2010, the BOP

---

1   Initially, William Baumgartel, a senior paralegal specialist for the BOP, determined that the requested records were totally exempt under Exemptions 6 and 7(C) of FOIA because they implicated the privacy interests of third parties and Mr. Abramoff. Baumgartel Decl. ¶ 7. As a result, he determined that the BOP would not perform a search for responsive records. *Id.* Despite Baumgartel's determination, his supervisor later directed him to instruct two BOP offices that were likely to have responsive records to conduct a search. *Id.* When these offices found no responsive documents, Baumgartel issued a "total denial" letter to CREW that the records were exempted from release. Ex. B to Baumgartel Decl. On August 5, 2010, CREW appealed the denial, which DOJ denied on September 28, 2010. Ex. C and Ex. D to Baumgartel Decl. The denial letter incorrectly stated that the BOP "did not conduct a search for the requested records." Ex. D to Baumgartel Decl. Another letter was sent on December 15, 2010, clarifying that the BOP had "conducted a preliminary search prior to responding to [CREW's] request." Ex. E to Baumgartel Decl.

released thirty-seven pages of responsive documents to CREW. *Id.* ¶ 11. "Seven of those pages were redacted in their entirety" and the remaining thirty pages were redacted in part. *Id.*[2] DOJ asserted that the redacted materials were exempt from disclosure under FOIA Exemptions 6 and 7(C). *Id.* Under FOIA, Exemption 6 exempts from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts information compiled for law enforcement purposes if the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

According to defendant, the seven pages of documents that were redacted in their entirety fall into three groups: (1) "three pages from a National Crime Information Center ("NCIC") form,"[3] (2) "three pages of communications between inmate Abramoff's attorney and the [BOP] to arrange for attorney-client meetings or calls," and (3) one page that would "indicate whether or not inmate Abramoff agreed to or declined a request for an interview by a third-party." Baumgartel Decl. ¶ 13.

---

After learning that CREW had filed this lawsuit to compel production of the records, the BOP officials decided to conduct a search for responsive records at the Federal Correctional Institution in Cumberland, Maryland, where Mr. Abramoff was incarcerated, as well as in his central file. Baumgartel Decl. ¶ 10.

2   As an initial matter, CREW does not challenge the withholding of the following categories of materials: (1) the BOP's Category 4 – The Names and Contact Information of the BOP Law Enforcement Personnel; (2) the BOP's Category 1 - three pages of NCIC forms; (3) the Criminal Division's Category B – DOJ attorney's email address and number; and (4) the Criminal Division's Category D – the name and email address of an FBI Special Agent. Pl.'s Cross Mot. for Summ. J. ("Pl.'s Cross-Mot") at 3 n.1. Plaintiff does not make any arguments challenging the withheld documents under FBI Categories (b)(2)-1, (b)(6)-1, and (b)(7)(C)-1, so the Court will not address these documents.

3   "NCIC is a nationwide computerized information system established to provide an electronic index of documented criminal justice information to all local, state, and federal criminal justice agencies." Baumgartel Decl. ¶ 13. Plaintiff does not challenge the withholding of the pages from the NCIC form. Pl.'s Cross-Mot. at 3 n.1.

3

On January 25, 2011, the BOP determined it had omitted three additional pages of responsive documents in its initial release and produced these additional pages to CREW. Baumgartel Decl. ¶ 16–17. At this time, the BOP also reconsidered its previous redactions and decided to remove redactions from ten documents. *Id*. ¶ 17.

### B. CREW's Second FOIA Request

CREW submitted its second FOIA request to DOJ's Criminal Division on May 6, 2010, asking for:

> [A]ll records of the Criminal Division including, but not limited to, records of the Public Integrity Section that reflect, refer to, or discuss the request of Mr. Alex Gibney, Zena Barakat, Jigsaw Productions, or anyone associated with Jigsaw Productions to interview Mr. Jack Abramoff [and] . . . all records regarding Mr. Abramoff's potential involvement, participation, or cooperation in any movies, books, magazines, newspapers, or television productions.

Attach. 1 to Ellis Decl. CREW's request stated it sought the records because they may disclose whether the Criminal Division prevented Abramoff from speaking with any individual associated with Jigsaw Productions in the making of a documentary or other members of the media. *Id*. The Criminal Division conducted a search for documents and released a total of thirty-five email messages to CREW, ten of which were released in full and twenty-five of which were partially redacted. Ellis Decl. ¶¶ 15–16.[4] The partially redacted emails withheld information based on FOIA Exemptions 6 and 7(C). *Id*. ¶ 18.

---

4   The Criminal Division also located several email messages originating from the FBI and one originating from the BOP, which were referred to those agencies for processing. Ellis. Decl. ¶ 27. The BOP released that two-page document with one of the pages partially redacted. Baumgartel Decl. ¶¶ 14–15. The FBI processed seven pages of email messages that were referred by the Criminal Division and released the documents to CREW on December 13, 2010. Hardy Decl. ¶ 6. Three pages were released in full and four pages were released with partial redactions. *Id*. ¶ 6.

Plaintiff filed this action seeking to compel disclosure of certain of the requested documents on October 26, 2010.  An amended complaint [Dkt. # 3] was filed on November 11, 2010.  DOJ filed a motion for summary judgment [Dkt. # 10] on February 23, 2011, and CREW cross-moved for partial summary judgment [Dkt. # 11] on March 28, 2011.  Pursuant to the Court's order, DOJ delivered the documents at issue to chambers on September 28, 2011 for *in camera* inspection to assist the Court in making a responsible *de novo* determination.  *See Ray v. Turner*, 587 F.2d 1187, 1995 (D.C. Cir. 1978).

## II.     Standard of Review

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).   In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate.  *Weisberg v. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted).   However, plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents."  *Brown v. DOJ*, 742 F. Supp. 2d 126, 130 (D.D.C. 2010), quoting *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (citation and internal quotation marks omitted).

In any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence."  *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  However, where a plaintiff has not provided evidence that an agency acted in bad faith,

"a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12. The district court reviews the agency's action *de novo*, and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

**III.   Analysis**

   **A.   FOIA Actions**

The purpose of FOIA is to require the release of government records upon request and to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by the release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential.") The Supreme Court has instructed that FOIA exemptions are to be "narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must satisfy two elements. First, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "[A]t the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885,

890 (D.C. Cir. 1995), citing *Oglesby*, 920 F.2d at 68.  Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith," *Defenders of Wildlife*, 314 F. Supp. 2d at 8  and "can be rebutted only 'with evidence that the agency's search was not made in good faith,'" *id*., quoting *Trans Union LLC v. Fed. Trade Comm'n,* 141 F. Supp. 2d 62, 69 (D.D.C. 2001).  Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption."  *Leadership Conference on Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.C. Cir. 2005).

### B.  Whether BOP and the Criminal Division Conducted Adequate Searches

CREW first argues that the searches performed by the BOP and the Criminal Division were not adequate.  Pl.'s Cross-Mot. at 4.  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  "To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search."  *Defenders of Wildlife, U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009).  However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was adequate."  *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts should attempt to micromanage the executive branch."  *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citations omitted).

1. The BOP's Search Was Adequate

In support of the adequacy of the searches, DOJ submitted a 15-page affidavit from William Baumgartel, a senior paralegal specialist for BOP. Baumgartel Decl. ¶ 1. In this role, Baumgartel is responsible for handling FOIA requests submitted to BOP by performing the search for responsive records and determining which records should be redacted, withheld, or disclosed. *Id*. ¶ 2. Baumgartel's declaration outlines the steps BOP took in response to CREW's request. He states that BOP directed the two offices that were most likely to have responsive records – the Public Information Office and the Legislative Affairs Office – to search their files. *Id*. ¶ 18. Because these offices indicated that responsive records were most likely to be found in Abramoff's Central File, the BOP also conducted a search of that file. *Id*. ¶¶ 19–20. An inmate's Central File contains information related to all aspects of an inmate's incarceration, including media requests. *Id*. Staff from the prison facility sent Baumgartel forty-six pages of responsive documents from the Central File, and Baumgartel determined that seventeen of those pages were not relevant to the request. *Id*. ¶ 21. Baumgartel then personally reviewed Abramahoff's entire Central file, which consists of approximately 1,000 pages, for the following search terms derived from the request: (1) Alex Gibney; (2) Zena Barakat; (3) Jigsaw Productions; and (4) Abbe Lowell. *Id*. ¶ 22. Baumgartel's review of the file produced an additional eight pages of documents. *Id*. Finally, the Public Information Office was asked to conduct another search for responsive records, which resulted in three additional pages of documents. *Id*. ¶ 23. Because in the absence of contrary evidence, agency declarations are given a presumption of good faith and are generally sufficient to demonstrate an agency's compliance with its obligations under FOIA, *Perry*, 684 F.2d at 127, the Court is persuaded that the BOP conducted an adequate search that was "reasonably calculated to uncover all relevant

documents.'" *Valencia–Lucena*, 180 F.3d at 325 (internal quotation marks omitted and citations omitted).

    2. <u>The Criminal Division's Search Was Adequate</u>

  DOJ submitted an affidavit from Kristin L. Ellis, a trial attorney in the DOJ Criminal Division responsible for reviewing FOIA requests. Ellis. Decl. ¶ 1. After receiving clarification from CREW regarding the time period for the requests, the Criminal Division searched the Central Criminal Division Index File, which "is a system of records consisting of indices of names and associated records." *Id*. ¶ 10. Because the index file generally would not include information such as media requests, no responsive records were found. *Id*. The Criminal Division also sent search requests to the Public Integrity Section and the Fraud Section – the offices that handled the Abramoff case – asking the attorneys who were staffed on the case to search their files and emails for any responsive records. *Id*. ¶ 11. The declaration, which the Court presumes to be made in good faith, demonstrates that the search was directed at the people and offices most likely to have responsive information. Thus, the steps taken by the Criminal Division took were reasonably calculated to uncover all relevant documents, and the search was adequate.

 **C. Whether the BOP, Criminal Division, and the FBI Properly Withheld Records or Portions of Records Under the FOIA Exemptions**

  The Court next will examine whether the responsive records that were not produced were properly withheld under the applicable FOIA exemptions. When an agency declines to produce a requested document, it bears the burden of justifying the decision to withhold records under FOIA's statutory exemptions. *See* 5 U.S.C. § 552(a)(4)(B). A court may grant summary judgment based solely on information provided in an agency's affidavits or declarations if they "describe the documents and the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either the contrary evidence in the record nor by evidence of agency bad faith." *Casey*, 656 F.2d at 738. Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citations omitted).

    1. <u>Documents Redacted Under Exemptions 6 and 7(C)</u>

CREW argues that Defendant improperly redacted material under Exemptions 6 and 7(C).[5] Because the Court finds that the records were correctly redacted under Exemption 6, it need not examine the latter. *Smith v. Dep't of Labor*, No. 10-1253 (JEB), 2011 WL 3099703, at *5 (D.D.C. July 26, 2011).[6] Exemption 6 allows withholding of "personnel and medical files and similar files" the disclosure of which "would constitute a clearly unwarranted invasion of

---

5    DOJ made one redaction under Exemption 7(F), in addition to Exemptions 6 and 7(C). Exemption 7(F) protects disclosure of information compiled for law enforcement purposes where release of such information "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(f). The Court does not reach the question of whether the document was properly withheld under Exemption 7(F) because it finds that it was correctly withheld under Exemption 6.

6    If the withholdings were proper under Exemption 6, they would also be proper under Exemption 7(C), which has been construed by the Supreme Court to be broader than Exemption 6. *DOJ v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 756 (1989). ("Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects. First, whereas Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,' the adverb 'clearly is omitted from Exemption 7(C) . . . . [And,] whereas Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion . . . . Thus, the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files.")

personal privacy." 5 U.S.C. § 552(b)(6).[7] The primary purpose of Exemption 6 is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). Such a determination is made by "weigh[ing] the privacy interest in non-disclosure against the public interest in the release of records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (internal quotation marks omitted and citation omitted).

The first step in the balancing test under both Exemptions 6 and 7(C) is to determine whether there is an individual privacy interest in the material withheld. *National Ass'n of Retired Fed Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). The Supreme Court has recognized that "the concept of personal privacy . . . is not some limited or 'cramped notion.'" *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165 (2004), quoting *Reporters Comm.*, 489 U.S. at 763. Rather, "privacy encompass[es] the individual's control of information concerning his or her person." *Reporters Comm.*, 489 U.S. at 763. FOIA's privacy exemptions were "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Wash. Post Co.*, 456 U.S. at 602 (internal quotation marks omitted and citation omitted). Information need not be intimate or embarrassing to qualify for Exemption 6 protection. *Horowitz v. Peace Corps,* 428 F.3d 271, 279 (D.C. Cir. 2005). Generally, personal identifying information such as a person's name, address, phone number, date of birth, criminal history, medical history, and social security number may be protected under Exemption 6. *Wash. Post Co.*, 456 U.S. at 600; *Horner*, 879 F.2d at 875; *Taitz v. Obama*, 754 F. Supp. 2d 57, 60 (D.D.C. 2010).

---

7   The parties do not contest that the documents at issue in this case meet the "similar files" requirement of Exemption 6.

Here, DOJ asserts that the individuals who sought to interview Mr. Abramoff in prison and Mr. Abramoff himself have a privacy interest at stake in the disclosure of the responsive documents.[8] DOJ claims that "the release of this information would associate the individuals with Mr. Abramoff and the criminal investigation related to him[] and could subject them to unwarranted attention, harassment, or embarrassment." Def.'s Mem. at 17. DOJ also submits that much of the redacted information is personal in nature, including dates of birth and social security numbers that prison visitors are required to provide. Def.'s Reply at 19. With respect to the request for information about compensation for a movie, DOJ argues that both the individual who made the offer and Mr. Abramoff himself have a privacy interest because responsive material would reveal personal financial information. Def.'s Mem. at 20.

Neither party has pointed to case law that directly addresses the factual scenario before the Court, or that answers the question of whether third parties such as the journalists and filmmakers who attempted to interview Mr. Abramoff have a protectable privacy interest.[9] It is true that these individuals sought to interview Mr. Abramoff in their professional capacities. And, the fact that some of the people who may be identified in the documents have spoken publicly about their attempts to secure interviews or film deals with Mr. Abramoff reduces the

---

8    This analysis applies to the documents defendant characterizes as: (1) the Criminal Division's Categories A and C – Names of Individuals Who Sought to or Actually Did Visit and/or Interview Mr. Abramoff while He Was in Prison, (2) the Criminal Division's Category E – Information About Compensation for a Movie; (3) the BOP's Category 1 – Names, Contact Information, and Other Information of Individuals Who Sought to or Actually Did Visit and/or Interview Mr. Abramoff While He Was in Prison; (4) the BOP's Categories 2 and 3 – Information Regarding Mr. Abramoff's Participation in Interview and Communications With His Attorney; (5) the FBI's Category (b)(6)-2/7(C)(2) – Name and Identifying Information of Third Party Merely Mentioned.

9    Mr. Abramoff and his attorney clearly have a privacy interest in their attorney-client meetings.

risk that if the information is released, they would be subjected to unwanted attention or embarrassment. Ex. B to Pl.'s Cross-Mot. at 3 (director Alex Gibney discussing his attempts to interview Mr. Abramoff in prison). Moreover, there is nothing in the record that demonstrates that the individuals who attempted to visit or interview Mr. Abramoff were directly involved in the criminal investigation, so defendant's argument on this point is not persuasive.

Instead, the best argument in favor of finding a privacy interest in this situation is that the D.C. Circuit has broadly construed the privacy interests of third parties under Exemption 6. *See Horowitz*, 428 F.3d at 279 (instructing that "[e]ven seemingly innocuous information can be enough to trigger" the privacy interests of third parties mentioned in government records); *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (finding that "Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature").[10] In light of these D.C. Circuit precedents and the fact the majority of redacted information concerns personal identifying information, the Court concludes for the purposes of the balancing test that there is at least a minimal privacy interest involved in this case.

The Court next must weigh the public interest in disclosure against the minimal privacy interest. The Supreme Court has determined that the only relevant public interest under FOIA is "the citizens' right to be informed about what their government is up to." *Reporters Comm.*, 489 U.S. at 773 (internal quotation marks omitted and citation omitted). In determining whether to disclose a document, a court must weigh "the nature of the requested document and its

---

10   Although the Court does not reach this ground, it notes that the presumption that names and identifying information about third parties should be withheld is even stronger under Exemption 7(C). *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 946 (finding a "categorical rule" that third party information in law enforcement records should not be disclosed absent "compelling evidence that the agency is engaged in illegal activity" and "that information is necessary to confirm or refute that evidence.")

relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *Id*. at 772 (internal quotation marks omitted and citations omitted). "That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id*. at 773.

CREW asserts that a strong public interest exists in the requested documents, namely, an interest in knowing the extent to which the BOP and Criminal Division "sought to prevent Mr. Abramoff from speaking with members of the media." Pl.'s Cross-Mot. at 15 (internal quotation marks and citations omitted). CREW contends that if the government interfered with media access to Abramoff, it "would raise serious issues of potentially illegal or improper conduct by DOJ, going to the core of why Congress enacted the FOIA in the first place." *Id*. CREW also claims there is a public interest in knowing the amount of compensation Mr. Abramoff was offered for media interviews. *Id*. at 16.

The Court concludes that any public interest asserted by CREW has been satisfied by the documents and portions of the documents already released and therefore there is no public interest in the limited redacted or withheld information that would justify its disclosure. Congress enacted FOIA to allow citizens to know "what their *government* is up to," *Reporters Comm.*, 489 U.S. at 773 (emphasis added), not what Mr. Abramoff or various press outlets are up to. CREW has been provided with the materials that advance the public interest it identified, *i.e.*, those that demonstrate what role, if any, DOJ or the Bureau of Prisons played in permitting or restricting media access to Mr. Abramoff. CREW now knows when and whether interview requests were made and how they were resolved. What has been redacted is simply the personal information identifying *who* made the requests, which is not a matter that has any bearing on

CREW's stated public purpose. And how much money a private citizen – even a prisoner – was offered by a private media concern reveals nothing about "what their government is up to." *Id*.

CREW complains that because there are redactions in the documents, the asserted public interest has not been achieved. But the Court has reviewed the documents *in camera* and finds that any redactions or withheld documents were narrowly tailored in order to remove the names or other private information about the third parties mentioned in the records. Releasing the redacted information in this case would reveal nothing about "the agency's performance of its statutory duties." *Lepelletier*, 164 F.3d at 46, quoting *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (internal quotation marks omitted). Rather, it would disclose only information about private citizens that would constitute a clearly unwarranted invasion of personal privacy. As the Supreme Court has explained, "FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *Reporters Comm.*, 489 U.S. at 744. The information about third parties in this case simply "happens to be in the warehouse of the Government," *id*., and sheds no light on the government's performance of its statutory duties. *Lepelletier*, 164 F.3d at 46. As a result, there is no public interest in the disclosure of these documents. Balancing a minimal privacy interest against a nonexistent governmental interest, the D.C. Circuit has held that "something . . . outweighs nothing every time. *Horowitz*, 428 F.3d at 278 (internal quotation marks omitted and citation omitted). The Court concludes that the same is true here. Although the privacy interest may be minimal, CREW cannot point to any public interest that overcomes even that weak privacy interest. *See Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 390–91 nn. 8 & 13 (D.C.

Cir. 1987) (stating that the requester under FOIA has the burden of demonstrating a valid public interest).

As the agency's redactions and withheld documents pursuant to Exemption 6 were valid, the Court need not consider Exemption 7(C).

## CONCLUSION

For the reasons above, the Court will grant DOJ's motion for summary judgment and will deny CREW's cross-motion for partial summary judgment. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 9, 2011