UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-1810 (ABJ) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to Fed. R. Civ. P. 59(e), plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") moves the Court to reconsider its Memorandum Opinion ("Mem. Op.") and Order dated November 9, 2011 [Dkt. # 18 and # 19] granting defendant Department of Justice's ("DOJ") motion for summary judgment. For the reasons set forth below, the Court will deny plaintiff's motion.

Rule 59(e) permits a party to move to "alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The D.C. Circuit has instructed that a Rule 59(e) motion "is discretionary" and "need not be granted unless the . . . [C]ourt finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted). A Rule 59(e) motion is "not simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) (per curiam). Courts in this district have determined that "clear error should conform to a very exacting standard," *Lightfoot v. District of*

*Columbia*, 355 F. Supp. 2d 414, 422 (D.D.C. 2005) (internal quotation marks omitted), and have indicated that "a final judgment must be 'dead wrong' to constitute clear error," *id.*, citing and quoting *Parts & Elec. Motors, Inc. v. Sterling Elec. Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

The Court notes at the outset that because it carefully considered all of the arguments advanced here by plaintiff at the summary judgment stage, the motion to reconsider will be denied. But, in light of this motion, the Court will specifically address the concerns plaintiff has raised.

Plaintiff submits that the Court committed "clear error" under Rule 59(e) in two ways: (1) by ruling that the searches conducted by defendant were adequate despite "contrary evidence" presented by plaintiff that DOJ "unreasonably narrowed its search and failed to produce or otherwise account for records of visits know to have taken place"; and (2) by improperly balancing the privacy interest against the public interest under Exemption 6 by failing "to take into account that one individual whose records are at issue is deceased and therefore has no remaining privacy interests to be protected." Pl.'s Mem. in Supp. of Mot. for Reconsid. ("Pl.'s Mem.") at 1, 3.

First, plaintiff contends that the Court failed to consider several arguments that defendant's search for responsive documents was too narrow and therefore inadequate to meet its obligations under FOIA. Pl.'s Mem. 4–6.[1]  Plaintiff submits that the search of Abramoff's Central File was inadequate because the requests specifically sought "any records regarding Mr. Abramoff's potential involvement, participation, or cooperation in *any* movies, books, magazines, newspapers, or television productions," Pl.'s Mem. at 4; *see also* Ex. A. to

---

1   The Court notes that the supplemental declarations submitted by the government addressed the majority of the concerns plaintiff has expressed about the adequacy of the search. *See, e.g.*, Baumgartel Supp. Decl. [Dkt. # 14-3]; Ellis Supp. Decl. [Dkt. # 13-2].

Baumgartel Decl. [Dkt. # 10-3], and defendant's search focused only on documents concerning Alex Gibney's and Jigsaw Productions' requests to interview Abramoff.  Pl.'s Mem. at 4–5. Because defendant used only the search terms "Alex Gibney," "Zena Barakat," Jigsaw Productions," and "Abbe Lowell," plaintiff contends that the search was not broad enough to capture media requests made by other individuals. *Id*. at 5.  But this argument is not persuasive because the record shows that defendant's search did not solely consist of that single step.  The declarations submitted by William Baumgartel, Senior Paralegal Specialist for the Federal Bureau of Prisons ("BOP"), represent that he "also searched for visitor lists or any document that referred to or was associated with any type of request to interview inmate Abramoff." Baumgartel Decl. ¶ 22; Baumgartel Supp. Decl. ¶ 3 [Dkt. # 14-3].  He also searched for "any documents related to media requests to interview inmate Abramoff."  Baumgartel Supp. Decl. ¶ 22.  According to defendant, this process yielded several documents concerning media requests that did not specifically reference the names used as search terms.  Def.'s Mem. in Opp. to Mot. for Reconsid. ("Def.'s Opp.") at 7–8.  [Dkt. # 20].  This information, coupled with the declaration of Mr. Baumgartel, which must be given a presumption of good faith, *SafeCard Serv., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.") (internal quotation marks omitted), satisfies the Court that the search was adequate.

Similarly, plaintiff argues that the search was inadequate because the Baumgartel Declaration did not provide the search terms that were used by the Legislative Affairs Office ("LAO") and because the Criminal Division only searched for the term "Jigsaw Productions." Pl.'s Mem. at 5.  With respect to the terms used by LAO, Mr. Baumgartel submitted a

supplemental declaration in which he explained that LAO generally is not involved in media requests regarding inmates because the office serves as the BOP's primarily liaison with Congress and government agencies. Baumgartel Supp. Decl. ¶ 2. As a result, it was unlikely that responsive documents would have been found in LAO's possession. *See id*. Despite this, in an abundance of caution, Baumgartel instructed LAO to conduct a search using the search term "Abramoff." *Id*. As expected, this search did not produce any responsive records. *Id*. The Court agrees with defendant that because any documents responsive to the requests in the LAO's files also would reference Abramoff, that the search was broad enough to capture any responsive documents. Def.'s Opp. at 8.[2]

As for plaintiff's argument about the inadequacy of the search conducted by the Criminal Division, plaintiff takes issue with the fact that the Central Criminal Division Index File ("CRM-001") was only searched for the term "Jigsaw Productions." Pl.'s Mem. at 5, citing Ellis Decl. ¶ 10. [Dkt. # 10-4]. But defendant provided an additional declaration from Kristin L. Ellis, a trial attorney at DOJ responsible for reviewing FOIA requests, which demonstrates that the Criminal Division also ran a search using the terms "Alex Gibney," "Zena Barakat," and "George Hickenlooper," which yielded no responsive documents. Ellis Supp. Decl. ¶ 2. [Dkt. # 13-2]. As with the LAO files, it was unlikely that responsive documents would be found in CRM-001 because that database tracks the names of subjects or targets of investigations. Def.'s Opp. at 9. It does not "collect/catalog the name of every individual who might have some tangential connection to an investigation or prosecution, such as a reporter who might want to interview a

---

2   The same is true for plaintiff's argument that the search of the Public Information Officer's email was inadequate because it was limited to the term "Abramoff." Pl.'s Mem. at 5. Because any interview request would necessarily include that term, the Court finds that the search was reasonably calculated to uncover all responsive documents.

defendant." Ellis Supp. Decl. ¶ 2; *see also* Ellis Decl. ¶ 10. Thus, the Court finds that the search of CRM-001 was adequate.

Plaintiff next claims that the search was inadequate because it did not produce documents referencing visits between Abramoff and film director George Hickenlooper and actor Kevin Spacey. Pl.'s Mem. at 4. Plaintiff contends that defendant's failure to produce or account for those documents, which are "known to exist by virtue of publicly available information," means that the search was inadequate. *Id.* But plaintiff's contention that the government has documents memorializing such visits is pure speculation. And, as the D.C. Circuit has explained, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc.*, 926 F.2d at 1201.

Plaintiff also claims that the Court erred in balancing the privacy interests against the public interest under Exemption 6 because the decision did not address "what, if any, privacy interest deceased filmmaker George Hickenlooper legitimately has in protecting from disclosure his visits with Mr. Abramoff." Pl.'s Mem at 6. But Mr. Hickenlooper is not the only person with a privacy interest at stake in this case. The Court agrees with defendant that "Mr. Abramoff retains some privacy interest in [whom] he chose to receive as a visitor while he was incarcerated." Def.'s Opp. at 12. Furthermore, case law in this Circuit holds that a person's death does not completely eliminate his privacy interest. *Schrecker v. DOJ*, 254 F.3d 162, 166 (D.C. Cir. 2001) ("[O]ne's own and one's relations' interests in privacy ordinarily extend beyond one's death."). And, even if the Court had found that there was a valid privacy interest in this case, none of the arguments advanced in this motion change the fact that plaintiff has failed to identify a public interest that would militate in favor of disclosure. *See* Mem. Op. at 15 ("CREW

cannot point to any public interest that overcomes even that weak privacy interest"), citing *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 390–91 nn.8 & 13 (D.C. Cir.1987).

Finally, plaintiff takes issue with the fact that the Court did not make a "specific finding" as to whether the release of redacted information in the documents, such as names and other identifying information, would serve a public interest. Pl.'s Mem. at 6. Plaintiff contends that "knowing who was and was not allowed to interview Abramoff . . . clearly would shed further light on the scope of DOJ's conduct and the extent to which it may have violated the law." *Id*. (internal quotation marks omitted). The Court disagrees. As it determined in its decision, the release of the information would not allow citizens to learn anything about "'what their government is up to.'" Memo Op. at 14, quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). ("Congress enacted FOIA to allow citizens to know 'what their *government* is up to,' not what Mr. Abramoff or various press outlets are up to.") *Id*. (citation omitted). Under Supreme Court precedent, this is the only relevant public interest under FOIA. *Reporters Comm.*, 489 U.S. at 773.

For the reasons above, it is ORDERED that plaintiff's motion for reconsideration is DENIED.

AMY BERMAN JACKSON
United States District Judge

DATE: April 10, 2012